**FILED**

UNITED STATES DISTRICT COURT

For the

EASTERN DISTRICT OF VIRGINIA

2011 DEC 22  P 3: 11

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| ANDREW FIALDINI,<br>    Plaintiff, | )<br>)<br>) |
| v. | )<br>)  Case No. _1:11CV1387-CMH/TRJ_ |
| ERIC COTE<br>    Individually and Officially | )<br>)<br>) |
| JAIME SANFORD<br>    Individually and Officially | )<br>)<br>) |
| GARY GAITHER<br>    Individually and Officially | )<br>)<br>) |
| STEPHEN O. SIMPSON<br>    Individually and Officially | )<br>)<br>) |
| All jointly and severally | )<br>) |
| Defendants. | )<br>) |

## COMPLAINT

COMES NOW your Plaintiff, Andrew Fialdini (hereafter "Fialdini"), by counsel, complains and requests relief against the Loudoun County Sheriff Stephen O. Simpson (hereafter "Simpson") in his official and individual capacity, Deputy Sheriff Eric Cote (hereafter "Cote") in his official and individual capacity, Deputy Sheriff Jaime Sanford (hereafter "Sanford") in her official and individual capacity, and Deputy Gary Gaither (hereafter "Gaither") in his official and individual capacity, jointly and severally.   In support thereof, Plaintiff states as follows:

### Introduction

1.      This is an action for money damages and injunctive relief brought

pursuant to 42 U.S.C. §§ 1983, and 1988; the Fourth, and Fourteenth Amendments to the

United States Constitution; Article 1, § 10, § 11 of the Virginia Constitution; Virginia

Code Sec. 19.2-59; Virginia Code sec. 19.2-59.1, and the Virginia common law against

the above named defendants.

2.      Plaintiff Fialdini alleges that individual deputy sheriff officers Cote,

Sanford, and Gaither illegally entered his home, assaulted him in his home, made an

unreasonable seizure of his person, falsely arrested him, used excessive force against him

during that seizure, and conspired amongst each other to cover up these violations of his

civil rights in violation of the Fourth and Fourteenth Amendments to the United States

Constitution and Article 1, § 10, § 11 of the Virginia Constitution.

### Jurisdiction and Venue

3.      The Court has federal subject matter jurisdiction in this action pursuant to

28 U.S.C. § 1331 because Plaintiff's claims under 42 U.S.C. § 1983 arise under laws of

the United States.  Pursuant to 28 U.S.C. § 1367, this court has supplemental jurisdiction

over Plaintiff's additional claims under state law because Plaintiff's state law claims

relate to Plaintiff's federal law claims, arise out of a common nucleus of operative facts,

and form part of the same case or controversy under Article III of the United States

Constitution.

4.      Venue is proper in the Alexandria Division of the Eastern District of Virginia because Plaintiff's claims arise primarily from unlawful conduct occurring in Ashburn and Leesburg, Loudoun County, Virginia.

## Parties

5.      Plaintiff Fialdini, at all times herein, was an adult citizen of Loudoun County, Virginia, residing at 43257 Preston Court, Ashburn, Virginia 20147.

6.      Defendants Simpson and Officers were at all times relevant to this Complaint duly appointed and acting officers of the Loudoun County Sheriff's Office (hereafter "LCSO"), acting under the color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the Commonwealth of Virginia and/or Loudoun County. Sheriff Simpson has responsibility over the policies and procedures of the deputy sheriff officers under the employ of the LCSO. Sheriff Simpson is responsible for the deputy sheriffs employed by the Loudoun County Sheriff's Office as their employment is based on his discretionary appointment. More specifically, at all times herein Cote was an individual employed by the Loudoun County Sheriff's Office with badge number 2417. At all times herein he was so employed and wearing his uniform and displaying his badge of authority. At all times herein Sanford and Gaither were individuals employed by the LCSO. At all times herein they were so employed and wearing their uniforms and displaying their badges of authority.

## Facts

7.      On October 19, 2009, Cote appeared at 43257 Preston Court, Ashburn, VA, dressed in his uniform and displaying his badge of authority.

3

8.     There he encountered the Plaintiff and Maryann Fialdini, the wife of the Plaintiff.

9.     Cote announced that he was there to serve an arrest warrant on a Nicholas Fialdini and inquired whether he was home.

10.    The Plaintiff and his wife informed Cote that Nicholas Fialdini did not live there as he had relocated to Alabama. Cote asked if they knew when Nicholas would next be back in town. He was informed that Nicholas would be visiting at the Thanksgiving time frame.

11.    On December 23, 2009, at approximately 9:00 p.m., Cote, dressed in his uniform and displaying his badge, again appeared at 43257 Preston Court, Ashburn, VA, the home of the Plaintiff.

12.    He was in possession of an arrest warrant for a Nicholas Fialdini who lived at 42357 Preston Court, a different address. At all times herein, Nicholas Fialdini was a resident of Alabama and that he did not live at either address.

13.    Cote has stated under oath that when he walked up to the house, he had no knowledge that there was anyone in the house; that he had no knowledge of any person potentially in the house who posed a danger to anyone; that he had no information about anyone in the house potentially possessing any contraband; that the alleged arrest warrant did not involve a violent crime; that he did not witness any crime as he approached the house; that there was no evidence that anyone was armed; and that he had no personal knowledge that Nicholas Fialdini was in the house; that he did no research to determine if Nicholas Fialdini was a resident at 43257 or 42357 Preston Court, Ashburn, VA; and that he was not in hot pursuit of any person.

4

14.     Upon knocking on the door, Cote was greeted by Plaintiff, who exited the house to speak with Cote, closing the door behind him.

15.     Cote indicated that he was there to execute an arrest warrant on Nicholas Fialdini.  He then started yelling at Fialdini, upset that Fialdini had not surrendered Nicholas Fialdini at the Thanksgiving timeframe.

16.     Fialdini asked Cote to produce a search warrant as Nicholas Fialdini did not reside at 43257 Preston Court, Ashburn, VA.

17.     Cote raised his voice, yelling at Fialdini that he did not have a search warrant, that he didn't need a search warrant, and that he was going to charge Fialdini with "hindering."

18.     Fialdini informed Cote that he did not consent to him entering the house and that he was going to call his counsel.  Fialdini turned and reentered the house and began to close the door.

19.     Cote has stated under oath that Fialdini never posed a danger to anyone; and that Fialdini did not provide any information on the 23rd of December that Nicholas Fialdini was a resident at 43257 Preston Court, Ashburn, VA; that he knew Fialdini did not have to answer his questions; and that he did not have consent to search the property at 43257 Preston Court, Ashburn, VA.

20.     In order to stop Fialdini from closing the door to his home, Cote entered the house with his foot and slammed his hand on the door to prevent it from being closed.

21.     When stepping on the throw rug in hallway, Cote caused Fialdini to lose his balance and fall into Cote and the door.  Fialdini's open palm made contact with Cote's chest.

22.     Cote yelled to Fialdini, "That's assault!" and forced his way further into the house and grabbed Fialdini and threw him into a wall and placed him handcuffs, announcing he was under arrest.

23.     At all times Cote knew, or should have known that his entrance into the home without a valid search warrant was a violation of Virginia Code sec. 19.2-59 as well as a violation of Plaintiff's rights under the United States and Virginia Constitutions. Cote then proceeded to take Fialdini to his squad car and called other deputies for assistance. While waiting for other officers to arrive, Cote again entered the house without benefit of a search warrant.

24.     At this time, Maryann Fialdini returned to her home. Upon approaching her front door, she observed that the front door was open and Cote was speaking to her then 11 year old son, who was sitting on the stairs leading up to the second floor.

25.     Cote informed Maryann Fialdini that he was there to speak to Nicholas Fialdini and that he had just arrested her husband Andrew Fialdini for allegedly assaulting an officer. Then, in an effort to intimidate her, Cote asked her if she had been drinking and asked her to submit to a breathalyzer.

26.     Maryann Fialdini responded that she had just come from the grocery store and would not submit to a breathalyzer. She then informed Cote that her home was not her son's legal residence and that he was a legal resident of Alabama.

27.     Maryann Fialdini then attempted to go and speak with her husband. Cote followed her down the driveway, got in front of her, and told her she was not allowed to speak to her husband. She then returned to her home, entering it through the garage. At this point there were no deputies or other law enforcement personnel in the house.

6

28.     At about this time, other officers, including Sanford and Gaither arrived at Fialdini's residence.  Cote and Sanford decided to enter the house in order to search the Fialdini residence.

29.     When Cote and Sanford entered the home again, without a search warrant or exigent circumstances, they were greeted by Maryann Fialdini, who told them they did not have her consent to search the home and that they should leave.  Maryann Fialdini then asked them if they had a search warrant.  They informed her that they did not have a search warrant but they had an arrest warrant for a Nicholas Fialdini, which they declined to produce for her.

30.     Sanford then told Maryann Fialdini that she did not need her consent. Maryann Fialdini told her that since this was not her son's residence and they didn't have a search warrant, they would have to leave.  Cote and Sanford refused to leave.

31.     At this time, Cote and Sanford were joined by Gaither.  Maryann Fialdini again reiterated that they did not have her consent to search her house or to be in her house.  All four declared they did not need a search warrant.  Then, Cote and Sanford pulled out their service revolvers and proceeded to search through the house.

32.     At this point, Maryann Fialdini gathered her 16 year old daughter, two of her daughter's friends, and her 11 year old son and placed them all in the family room on the main level of the house because she was afraid for their safety given the hostility of Cote, Sanford, and Gaither and the fact that they had weapons drawn.

33.     After searching all the bedrooms and bedroom furniture on the second floor, making sure no one was hiding in an underwear drawer, the officers searched the main level.  At no time did they ever tell Maryann Fialdini she could not follow them.

7

After finishing the search of the main level and making sure no person was hiding in the silverware drawers, they proceeded to the basement.

34.    Gaither stayed at the top of the stairs and permitted Maryann Fialdini to follow Cote and Sanford into the basement. Sanford told Maryann Fialdini not to get too close so as not to impede her illegal search. Both Cote and Sanford passed her and entered the rec-room. Maryann Fialdini turned on the light in the rec-room for her.

35.    Unbeknownst to Maryann Fialdini because she had been out shopping, Nicholas Fialdini was at his parent's home in the basement bedroom. Upon finding him there and placing him under arrest, Sanford then grabbed Maryann Fialdini and stated she was being placed under arrest for "hindering". She then took Fialdini to the ground, patted her and searched her for weapons, and then handcuffed her.

36.    The officers then led Maryann Fialdini and her son upstairs with their guns drawn, forcibly removed her from her home in front of her children and friends, and then led her out into the street full of neighbors and placed her in a vehicle owned and operated by the LCSO. Cote and Sanford then took Fialdini, his wife, and their son to the Loudoun County Adult Detention facility (hereinafter "ADC"). There all three subjected to further humiliation and embarrassment by being exposed to a friend who was a parent from the son's baseball team.

37.    Cote, who had accompanied Fialdini, his wife Maryann Fialdini, and Nicholas Fialdini, to the ADC, had been engaged in a process of harassment since their arrival at the ADC, telling Fialdini and her husband that they could not look at one another, and taunting them that they were going to jail, and would be felons. He also

made Fialdini take a hand held breath test in the hopes of finding that she had been drinking. The test was negative.

38.     Cote processed the complaint and sought a warrant against Fialdini. Cote filed a false, incomplete complaint to the magistrate attempting to justify the officers' illegal actions alleging that they did not need a search warrant to enter his home and alleging that they had authority to search for the body of a Nicholas Fialdini. He further stated that Fialdini assaulted him. At no time did Cote mention that he had no search warrant to enter the home, that he was not given consent to enter the home, that he was not confronted with exigent circumstances, that he did not know the residence of Nicholas Fialdini, and that he did not have reason to believe that Nicholas Fialdini was in Fialdini's residence.

39.     Prior to filing the executed warrant for Nicholas Fialdini, Cote altered the address on the warrant to reflect that of Plaintiff's residence.

40.     Fialdini was issued process and charged with a Class I Felony alleging a violations 8.2-57 of the Virginia Code for assaulting an officer and a Class I misdemeanor alleging a violation of § 18.2-460 of the Virginia Code knowingly impeding a law enforcement officer in his duties. He was released on an unsecured bond.

41.     At all times, Fialdini maintained his innocence.

42.     During the time between her arrest and trial, over eight months, Fialdini was removed from his job and placement on administrative leave. In addition to suffering during the ordeal, Fialdini suffered professional embarrassment, loss of standing, damages to his reputation, and loss of promotion potential.

43.     Fialdini also suffered further embarrassment as one of the officers filed a complaint with the Loudoun County Child Protective Services (hereafter "CPS") on the basis that Fialdini's 11 year old son was left alone.  In the complaint, the officer failed to mention that the child was alone in the house while Cote escorted his father to a squad car after illegally arresting him in his house. Fialdini was forced to endure the embarrassment and potential consequences of a CPS investigation.

44.     At trial scheduled for Fialdini on October 6, 2010, prior to Plaintiff being arraigned, and without testimony from any witness, the Commonwealth of Virginia moved to dismiss the charges with prejudice as they lacked sufficient evidence to support the allegations.  No evidence was ever presented concerning Plaintiff ever charging Cote or hindering any other officer.

45.     Within one year of the incidents occurring on December 23 and December 24, 2009, in accordance with Virginia Code § 8.01-195.7, Fialdini properly filed the Notice required pursuant to Virginia Code § 8.01-195.6.

## Count I
## (1983 Claim against Cote)

46.     Plaintiff re-alleges and incorporates by references all previous paragraphs of the Complaint as if fully set forth herein.

47.     The Fourth Amendment to the U.S. Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

48.     42 U.S. § 1983 states in part: "Every person who, under color of any

statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of

Columbia, subjects, or causes to be subjected, any citizen of the United States or other

person within the jurisdiction thereof to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured in an

action at law, suit in equity, or other proper proceeding for redress…"

49.     Standing to assert a Fourth Amendment claim depends upon whether the

plaintiff has a legitimate expectation of privacy in the area searched. Minnesota v. Olson,

495 U.S. 91, 95, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990).  Fialdini had an expectation of

privacy in her home and about her person.

50.     The Fourth Amendment protects the rights of citizens to refuse to have

their homes searched. In order for a search to be legal, the police must have a warrant or

their conduct must fall within an exception to the Fourth Amendment.  United States v.

Hill, 649 F.3d 258, 267 (4th Cir. Va. Aug. 18, 2011).

51.     "It is a 'basic principle of Fourth Amendment law' that searches and

seizures inside a home without a warrant are presumptively unreasonable." Payton v.

New York, 445 U.S. 573, 586-87, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). Indeed, the

"'physical entry of the home is the chief evil against which the wording of the Fourth

Amendment is directed.'" Id. at 585-86.

52.     The Supreme Court of the United States has explained: "'at the very core

[of the Fourth Amendment] stands the right of a man to retreat into his own home and

there be free from unreasonable governmental intrusion'. . . In terms that apply equally to

seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm

line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Payton, 445 U.S. at 589 (quoting in part, Silverman v. United States, 365 U.S. 505, 511, 5 L. Ed. 2d 734, 81 S. Ct. 679 (1961)).

53.     Warrantless entries into dwellings, followed by searches, seizures, and arrests therein, are presumed to be unreasonable, in Fourth Amendment terms, casting upon the police a heavy burden of proving justification by exigent circumstances. Verez v. Commonwealth, 230 Va. 405, 410-411 (Va. 1985).

54.     In analyzing whether exigent circumstances justified a warrantless search, circumstances must exist that would cause an officer to have an "objectively reasonable belief that an emergency existed that required immediate entry to render assistance or prevent harm to persons or property within." United States v. Moss, 963 F.2d 673, 678 (4th Cir. 1992). The Supreme Court has emphasized that "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify the action." Brigham City v. Stuart, 547 U.S. 398, 404, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006) (citation and quotations omitted). Examples of such emergencies include those "to assist persons who are seriously injured or threatened with such injury." Id. at 403.

55.     While no court has, to Fialdini's knowledge, attempted to formulate a final and comprehensive list of all exigent circumstances which might justify a warrantless entry, the Supreme Court of Virginia, in Verez, supra, listed ten such circumstances. These include: (1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4)

12

information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers reasonably believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit. Id., at 410-411. None of these circumstances are applicable to Cote's warrantless entry into Mr. Fialdini's home.

56.    "[F]or Fourth Amendment purposes an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives, when there is reason to believe the suspect is within." Payton, 445 U.S. at 601. (emphasis added). However, even when applying the Payton standard, Cote's entering into Fialdini's home cannot be justified.

57.    In Payton, the Supreme Court of the United States established a two prong test for entry of a home for purposes of executing an arrest warrant. First, the home must be the residence of the subject of the arrest warrant; and second, the officer must have reason to believe the suspect is within the home at that time. It is clearly established law that because Cote did not have a search warrant for Fialdini's house, in order to enter the house without consent, Cote needed (1) a warrant for Nicholas Fialdini's arrest; (2) reason to believe Nicholas Fialdini was in the house; and (3) reason to believe Nicholas Fialdini resided therein. United States v. Willis, 2010 U.S. Dist. LEXIS 103223, 6-8 (E.D. Va. Sept. 29, 2010), citing Payton v. New York, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); Steagald v. United States, 451 U.S. 204, 101 S. Ct. 1642, 68 L. Ed.

13

2d 38 (1981); <u>United States v. Young</u>, 609 F.3d 348, 352 (4th Cir. 2010); <u>Valdez v. McPheters</u>, 172 F.3d 1220, 1222 (10th Cir. 1999); <u>United States v. Lauter</u>, 57 F.3d 212, 213 (2d Cir. 1995); <u>United States v. Magluta</u>, 44 F.3d 1530, 1532 (11th Cir. 1995); <u>Wallace v. King</u>, 626 F.2d 1157, 1158-59, 1161 (4th Cir. 1980); <u>Solis-Alarcon v. United States</u>, 514 F. Supp. 2d 185, 192-93 (D.P.R. 2007); <u>Rich v. United States</u>, 158 F. Supp. 2d 619, 627 (D. Md. 2001); <u>Smith v. Tolley</u>, 960 F. Supp. 977, 980 n.1, 984, n. 4 (E.D. Va. 1997); and <u>People v. Aarness</u>, 150 P.3d 1271, 1273 (Colo. 2006).

58.     Cote has stated under oath that he did no research to determine if the residence was that of Nicholas Fialdini; the address on the arrest warrant identified address other than the Plaintiff's; that he had no reason to believe that anyone was at the home when he approached; that he had no personal knowledge that Nicholas Fialdini was within Plaintiff's home at that time;  that  he only knew that Nicholas Fialdini would be visiting at his parents' house over the Thanksgiving weekend and knew nothing about visits in December; that he had not cased the home or observed people entering or leaving; and that there were vehicles in front of the home.

59.     Although Cote's subjective state of mind is not relevant, his perceptions of the objective facts of the incident in question are relevant. <u>White v. Smereka</u>, 2010 U.S. Dist. LEXIS 58908 (W.D.N.C. June 14, 2010). <u>See also</u>, <u>Perry v. Rowland</u>, 41 F.3d 167, 172 (4th Cir. 1994); <u>Smith v. Tolley</u>, 960 F. Supp. 977, 980-999 (E.D. Va. 1997); <u>Whren v. United States</u>, 517 U.S. 806, 813-814, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). As such, Cote's view is evidence of a reasonable reading of the objective facts from an experienced officer's perspective. <u>See United States v. Hill</u>, 649 F.3d 258, 263 (4th Cir. Va. Aug. 18, 2011).

14

60.     Absent a showing that Nicholas Fialdini's residence was the same as Fialdini's, Cote had no authority to enter Fialdini's house to execute an arrest warrant. Further, even if somehow one were to establish Fialdini's home was the residence of Nicholas Fialdini, Cote's sworn statement that he had no knowledge that Nicholas Fialdini was in the dwelling, and his failure to identify any objective facts relating to knowledge of any person being in the home, establishes that he had no authority to enter Fialdini's house to execute an arrest warrant.

61.     It is clearly established law, for almost thirty years, that a law enforcement officer may not, consistent with the Fourth Amendment, search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant, absent consent or exigent circumstances. Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642 (1981). Because Fialdini's home was not the home of Nicholas Fialdini, the officer needed a search warrant before entry, consent, or exigent circumstances. As alleged previously, none of these existed.

62.     The LCSO and Loudoun County Sheriff have established procedures for entry into a third party home without a search warrant. General Order 610(B)(b) states in part:

>    Sworn personnel executing arrest warrants shall not search a third party
>    residence for a suspect unless there is probable cause to believe the
>    suspect is present on the premises. In addition, one of the following must
>    exist (emphasis in the original): 1. A deputy is in hot pursuit of a suspect;
>    2. Consent is given by the owner or person occupying the premises to be
>    searched; 3. There exists a justifiable fear of injury to people or property if
>    the arrest is delayed; or Other exigent circumstances are present, i.e., those
>    circumstances requiring immediate attention. If one of the aforementioned
>    situations does not exist, a search warrant shall be obtained. These criteria
>    do not apply to property owned or leased by the person named in the

warrant. Reasonable belief that the person named in the warrant is present on his/her own premises is sufficient reason to conduct the search."

Under the LCSO General Order, Cote did not have authority to enter the house as there was no probable cause for Cote to believe that Nicholas Fialdini was present at Fialdini's residence and there was no hot pursuit, consent, fear of injury, or other exigent circumstance. Further, there was no reasonable belief that the property was Nicholas Fialdini's own premises.

63.     In the Fourth Circuit, courts have sanctioned entry only where multiple facts support a reason to believe that the subject of the arrest warrant is present at the time of entry. United States v. Hill, 649 F.3d 258, 264 (4th Cir. Va. Aug. 18, 2011). Cote testified under oath that he had no personal knowledge of whether Nicholas Fialdini was at that house. Cote only testified to knowing that Nicholas Fialdini would be at his parents' house over the Thanksgiving weekend one month earlier, that he had not cased the home or observed people entering or leaving, and that there were vehicles in front of the home. Here, at best, Cote had no reason to believe that anyone was present at Fialdini's home, let alone Nicholas Fialdini. Cote could not have had a reasonable belief that Nicholas Fialdini was in the home, solely relying on unidentified cars being parked in front of the home on the street.

64.     Cote is not shielded from liability for the violation of Fialdini's right against illegal search. The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S.

800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). However, qualified immunity is lost
when an officer violates the Fourth Amendment when a reasonable officer should know
that the specific conduct at issue was impermissible. See Anderson v. Creighton, 483
U.S. 635, 638-39, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987).

65.    Officers are not afforded protection when they are "plainly incompetent or
. . . knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 89 L. Ed. 2d 271,
106 S. Ct. 1092 (1986). This is so because a reasonable officer is presumed to know
clearly established law. See Harlow, 457 U.S. at 818-19 ("[A] reasonably competent
public official should know the law governing his conduct.") Id. at 974.

66.    In other words, police officers are entitled to qualified immunity unless
"(1) the officers' conduct violates a federal statutory or constitutional right, and (2) the
right was clearly established at the time of the conduct, such that (3) an objectively
reasonable officer would have understood that the conduct violated that right." Knussman
v. Maryland, 272 F.3d 625, 633 (4th Cir. 2001) (internal quotations and citations
omitted); Torcasio v. Murray, 57 F.3d 1340, 1343 (4th Cir. 1995). Pittman v. Nelms, 87
F.3d 116, 118-19 & n.2 (4th Cir. 1996).

67.    The Supreme Court has held that a right can be deemed clearly established
even if there is no prior decision addressing the precise conduct at issue, so long as its
illegality would have been evident to a reasonable officer based on existing caselaw. See
Wilson v. Layne, 526 U.S. 603, 615, 143 L. Ed. 2d 818, 119 S. Ct. 1692 (1999);
Anderson v. Creighton, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987)
(stating that the precise conduct at issue need not have been held illegal for a right to be
clearly established; instead, the particularity inquiry looks to whether "in the light of pre-

existing law the unlawfulness [was] apparent"); cf. United States v. Lanier, 520 U.S. 259, 270-71, 137 L. Ed. 2d 432, 117 S. Ct. 1219 (1997).

68.     There can be no doubt that Cote's entrance into Fialdini's home violated Fialdini's rights guaranteed by the Fourth Amendment of the U.S. Constitution, as applied to the states through the Fourteenth Amendment of the U.S. Constitution. Further, the examination and recitation of existing caselaw in this complaint, as well as the standing order, demonstrates that the right was clearly established at the time of Cote's illegal entrance into Fialdini's home. Further, because a reasonably competent officer should know the law governing his conduct, it stands that Cote should have been aware of the restrictions placed on his actions by the law. See United States v. Tibbetts, 396 F.3d 1132, 1138 (10th Cir. 2005) ("[F]ailure to understand the law by the very person charged with enforcing it is not objectively reasonable."); United States v. Chanthasouxat, 342 F.3d 1271, 1279 (11th Cir. 2003) (holding that a mistake of law cannot provide the "objectively reasonable grounds for reasonable suspicion or probable cause"). Moreover, the LCSO General Order made him aware of the requirements.

69.     Cote's actions were motivated by his anger at Fialdini's refusal to consent to the search of his home. This is a case in which Cote, angered by a homeowner's correct statement of his legal rights and refusal to permit a search which was clearly illegal absent his consent, entered a home illegally and arrested a homeowner in a fit of pique. See Rogers v. Pendleton, 249 F.3d 279, 285 (4th Cir. Va. 2001)

70.     Cote, by illegally entering her home, deprived Fialdini of his privacy interest in his residence. As a victim of Cote's unreasonable search, he may recover damages directly related to the invasion of his privacy, including damages for physical

18

injury, property damage, injury to reputation, and so forth. Hector v. Watt, 235 F.3d 154, 157 (3rd Cir. 2000).

## Count II
### (1983 Claim against Cote, Sanford, and Gaither for search)

71.     Plaintiff re-alleges and incorporates by references all previous paragraphs of the complaint as if fully set forth herein.

72.     Upon leaving Fialdini's residence. Cote had no additional authority to enter into Fialdini's home. When he re-entered and was found speaking with Fialdini's 11 year old son, he had again violated Fialdini's right to be secure in his home.

73.     Further, when Cote re-entered Fialdini's house for a second time, and Sanford entered Fialdini's house, and when they were joined by Gaither, all three crossed the threshold and entered Fialdini's house in violation of his Fourth Amendment right to be secure in her home.

74.     Cote, Sanford, and Gaither entered Fialdini's house and conducted a search without a search warrant, consent, or exigent circumstances.   Moreover, none possessed any information as to the residence of Nicholas Fialdini or to his location; and, therefore did not have a reason to believe that Fialdini's address was Nicholas Fialdini's residence nor a "reasonable belief" that he would be home. See, e.g., United States v. Graham, 553 F.3d 6, 13 (1st Cir. 2009); United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir. 1995), cert. denied, 516 U.S. 869, 116 S. Ct. 189, 133 L. Ed. 2d 126 (1995).

75.     The Fourth Circuit has not adopted a definition of reasonable belief and its relationship to probable cause. The Court has noted in United States v. Hill, supra, that some circuits have found that reasonable belief is the same as probable cause. See United States v. Hardin, 539 F.3d 404, 416 (6th Cir. 2008)(probable cause is the correct standard

19

to use in determining an officer's reasonable belief that the subject of a warrant is present in the home); United States v. Gorman, 314 F.3d 1105, 1114 (9th Cir. 2002) (same); see also United States v. Jackson, 576 F.3d 465, 469 (7th Cir. 2009) (noting an inclination to believe "that 'reasonable belief' is synonymous with probable cause.").

76.    The Fourth Circuit further noted that other circuits have simply found that the distinction between reasonable belief and probable cause is indefinite or negligible. See United States v. Barrera, 464 F.3d 496, 501 n.5 (5th Cir. 2006) (noting that the distinction between probable cause and reasonable belief is "more about semantics than substance"), cert. denied, 550 U.S. 937, 127 S. Ct. 2247, 167 L. Ed. 2d 1096 (2007); Magluta, 44 F.3d at 1535 (noting that it is "difficult to define the Payton 'reason to believe' standard, or to compare the quantum of proof the standard requires with the proof that probable cause requires.").

77.    The Fourth Circuit has further noted that still other circuits have found that the requirements of reasonable belief are something less than probable cause. See United States v. Thomas, 429 F.3d 282, 286, 368 U.S. App. D.C. 285 (D.C. Cir. 2005) ("reasonable belief" requires less than probable cause), cert. denied, 549 U.S. 1055, 127 S. Ct. 660, 166 L. Ed. 2d 519 (2006); Valdez v. McPheters, 172 F.3d 1220, 1227 n.5 (10th Cir. 1999) (same); United States v. Lauter, 57 F.3d 212, 215 (2d Cir. 1995) (same).

78.    Finally, the Fourth Circuit has noted that a final set of circuits has taken no position as to the relationship between "reasonable belief" and probable cause. United States v. Weems, 322 F.3d 18, 22 (1st Cir. 2003); United States v. Risse, 83 F.3d 212, 216 (8th Cir. 1996); United States v. Edmonds, 52 F.3d 1236, 1248 (3d Cir. 1995), vacated in part on other grounds, 52 F.3d 1251.

79.    In Hill, supra, decided in August 2011, the Fourth Circuit joined the last

group and declined to reach a conclusion as to whether 'reason to believe' is as stringent

as 'probable cause'. The Court declined because they concluded, based on the facts of the

case that the police entry was not justified even under the less stringent interpretation of

the standard.

80.    The same conclusion is applicable in this case. Cote's observations are

the basis for determining the objective facts that the officers relied upon. None of the

three officers possessed a search warrant for Fialdini's home. Fialdini's address was not

that found on the warrant for Nicholas Fialdini's arrest. None of the officers possessed

any knowledge of Nicholas Fialdini's residence or contemporaneous location. No exigent

circumstances existed.

81.    Cote, Sanford, and Gaither, by illegally entering Fialdini's home, deprived

Fialdini of his privacy interest in her residence. As a victim of Cote, Sanford, and

Gaither's unreasonable search, he may recover, and hereby prays for damages directly

related to the invasion of his privacy, including damages for physical injury, property

damage, injury to reputation, and so forth.

## Count III
### (1983 Claim against Cote, Sanford, and Gaither for Conspiracy)

82.    Plaintiff re-alleges and incorporates by references all previous paragraphs

of the complaint as if fully set forth herein.

83.    Prior to Cote entering Fialdini's home for the third time with Sanford,

Cote and Sanford agreed that they were going to search Fialdini's house. When Gaither

joined the two in Fialdini's house, he agreed to participate in the search of Fialdini's

house with the others. All three officers knew that there was no search warrant

authorizing such action nor were there any exigent circumstances permitting such a search. None of the three had any knowledge or reasonable belief that Fialdini's house was the residence of Nicholas Fialdini or that he was located inside the residence.

84.    Cote, Sanford, and Gaither acted jointly in concert and took overt actions to support their agreement to search Fialdini's house which resulted in deprivation of Fialdini's Constitutional right to privacy and to be secure in her home. Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 421 (4th Cir. 1996) (citing Hafner v. Brown, 983 F.2d 570, 577 (4th Cir. 1992)). In this regard, the three officers established a "meeting of the minds" to violate the claimant's constitutional rights." Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995) (citing Caldeira v. Cnty. of Kauai, 866 F.2d 1175, 1181 (9th Cir. 1989)). The actions of the three officers, in light of Fialdini's emphatic denial of consent, demonstrate that the officers positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan. McDaniel v. Maryland, No. RDB-10-00189, 2010 U.S. Dist. LEXIS 84784, 2010 WL 3260007, at *12 (D. Md. Aug. 18, 2010) (citing Hinkle, 81 F.3d at 421)).

85.    The conspiracy between the officers is more apparent in light of the individual officer's obligation to protect Fialdini. Although generally, a person has no duty to control the conduct of third persons in order to prevent physical harm; the general rule does not apply when a special relationship exists "(1) between the defendant and the third person which imposes a duty upon the defendant to control the third person's conduct, or (2) between the defendant and the plaintiff which gives a right to protection to the plaintiff." Burdette v. Marks, 244 Va. 309, 311-12, 421 S.E.2d 419, 420 (1992).

86.    In <u>Burdette</u>, the Supreme Court of Virginia established the principle that a deputy sheriff who was on duty at the time of a crime or deprivation of rights against a person, and who should have known that the person was in danger from that crime or about to suffer a deprivation of rights, had a duty to protect that person and could be held liable for their failure to do so. <u>Id</u>. at 312-13, 421 S.E.2d at 421; <u>Commonwealth v. Burns</u>, 273 Va. 14, 17-19 (Va. 2007).

87.    Because the law held Sanford and Gaither to the obligation to protect Fialdini's rights, when made aware of Cote's previous illegal entries into Fialdini's house, absent a conspiracy to violate Fialdini's rights, Sanford and Gaither were expected to take affirmative action to protect Fialdini from harm.

88.    Cote, Sanford, and Gaither, by conspiring to, and illegally entering Fialdini's home, deprived Fialdini of his privacy interest in her residence. As a victim of Cote, Sanford, and Gaither's conspiracy, she may recover, and hereby prays for, damages directly related to the invasion of his privacy, including damages for physical injury, property damage, injury to reputation, and so forth.

## Count IV
### (1983 Action for False Arrest and Seizure against Cote)

89.    Plaintiff re-alleges and incorporates by references all previous paragraphs of the complaint as if fully set forth herein

90.    Whether a crime constitutes a misdemeanor or a felony, if an officer effects an arrest when he or she does not have probable cause, the arrestee's constitutional rights have been violated. See <u>U.S. v. Watson</u>, 423 U.S. 411, 4176, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976).

91.     Virginia has long held that an officer who comes on the property of a citizen without authority is a trespasser.  McClannan v. Chaplain, 136 VA 1, 116 S.E. 495 (1923).  Moreover, an "owner may resist the trespass, opposing force against force." Bausell v. Commonwealth, 165 Va. 669, 688 (Va. 1935); Montgomery v. Commonwealth, 98 Va. 840 (Va. 1900) (everyman has the right to protect his property absent the use of deadly or unreasonable force).

92.     Even if one accepts Cote's statement that Fialdini "assaulted" him prior to be being seized, his unlawful presence in Fialdini's home permitted him to defend his property and those therein with reasonable force.

93.     Cote lacked probable cause to arrest Fialdini.  As a consequence, he suffered damages.

94.     As a victim of Cote's illegal arrest, Fialdini may recover, and hereby prays for, damages directly related to his unlawful seizure, including damages for physical injury, property damage, injury to reputation, and so forth.

## Count VII
## (1983 action for Malicious Prosecution and Deprivation of Liberty against Cote)

95.     Plaintiff re-alleges and incorporates by references all previous paragraphs of the complaint as if fully set forth herein.

96.     The Fourth Circuit has recognized the due process "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in his investigatory capacity." Washington v. Wilmore, 407 F.3d 274, 282 (4th Cir. 2005).

97.    Cote deprived Fialdini of specific 4th and 14th Amendment rights stemming from Cote's actions in furtherance of the prosecution, though he lacked probable cause to pursue such actions. Consequently, Fialdini seeks recovery for malicious prosecution of a constitutional magnitude.  See Lewis v. McDorman, 28 F.3d 1210 (4th Cir. Va. 1994).

98.    The Fourth Circuit has recognized that concealment of exculpatory evidence which results in a constitutional deprivation provides the basis for an action under § 1983. See Goodwin v. Metts, 885 F.2d 157 (4th Cir. 1989)(hereinafter "Goodwin"); cert. denied sub nom. Maxwell v. Goodwin, 494 U.S. 1081, 108 L. Ed. 2d 942, 110 S. Ct. 1812 (1990); see also Sanders v. English, 950 F.2d 1152, 1163, 64 (5th Cir. 1992) (relying on Goodwin). The nature of such a claim is that of state law malicious prosecution resulting in a constitutional deprivation. Id. at 160 n.1.

99.    Under Virginia law, a prima facie case of malicious prosecution requires a showing that the prosecution was 1) malicious; 2) instituted by, or with the cooperation of, the defendant; 3) without probable cause; and 4) terminated in a manner not unfavorable to the plaintiff. Hudson v. Lanier, 255 Va. 330, 333, 497 S.E.2d 471 (1998). Actions for malicious prosecution arising from criminal proceedings are not favored in Virginia. Ayyildiz v. Kidd, 220 Va. 1080, 1082, 266 S.E.2d 108 (1980). The requirements for maintaining an action of malicious prosecution arising from a criminal case are more stringent than those applied in other tort actions. Id.

100.    "[A] police officer who withholds exculpatory information from the prosecutor can be liable under both section 1983 and the state common law," Id. at 162, where "his actions and omissions caused the [plaintiff] unfairly to be subjected to a

criminal trial," Id. at 162-63 (alteration not in original).  The Fourth Circuit borrowed the

reasoning of the Seventh Circuit in Jones v. City of Chicago, 856 F.2d 985 (7th Cir.

1988), noting that in constitutional-tort cases, as in other cases, a man is responsible for

the natural consequences of his actions[, hence,] a prosecutor's decision to charge,  a

grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed

to trial -- none of these decisions will shield a police officer who deliberately supplied

misleading information that influenced the decision. Goodwin, 885 F.2d at 162 (quoting

Jones at 993).

101.    Merely "being subjected to a prosecution because an officer withheld

exculpatory evidence from the prosecutor while urging that the prosecution should go

forward can work a constitutional deprivation." Id. This is because a prosecution may

interfere not only with a defendant's physical liberty, it may also "disrupt his employ-

ment, drain his financial resources, curtail his associations, subject him to public obloquy,

and create anxiety in him, his family, and his friends." Id. (citation omitted). n3

102.    Analogously, the issuance of an arrest warrant does not shield Cote, who

applied for the warrant, from liability because, as a reasonably well-trained officer, he

would have known that he lacked probable cause. Goodwin, 885 F.2d at 162 (citing

Malley v. Briggs, 475 U.S. 335, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986).

103.    The Fourth Circuit, in Goodwin, linked the 4th and 14th Amendments in

its constitutional analysis, and noted that the constitutional evil arose not from any one

element or procedural shortcoming, but from the very occurrence of prosecution in bad

faith. 885 F.2d at 162. With this analysis, the court conveyed that the 14th amendment

deprivation at stake in such cases is substantive, not procedural. Consequently, Cote

cannot rely on the Parratt random act defense, as that defense applies only to procedural

due process violations. See Zinermon v. Burch, 494 U.S. 113, 125, 108 L. Ed. 2d 100,

110 S. Ct. 975 (1990); see also Parratt v. Taylor, 451 U.S. 527, 68 L. Ed. 2d 420, 101 S.

Ct. 1908 (1981).

104.    In Goodwin, the court established that a denial of "due process" through

withholding evidence negating probable cause was a sufficient deprivation of rights of a

constitutional magnitude within the meaning of Cramer v. Crutchfield, 648 F.2d 943 (4th

Cir. 1981) (per curiam). Goodwin, 885 F.2d at 163.

105.    The prosecution of Fialdini was set on foot by Cote and it terminated in a

dismissal with prejudice of all charges against Fialdini. The prosecution was instituted

and procured by Cote's filing of his false and incomplete criminal complaint against

Fialdini. The complaint was without probable cause as Cote was a trespasser in

Fialdini's house at the time of the alleged offense. The filing of the complaint was

malicious.

106.    Entry of an order of nolle prosequi or dismissal with prejudice constitutes

termination "in a manner not unfavorable to the plaintiff." Niese v. Klos, 216 Va. 701,

703-704 (1976). Malice may be inferred from the absence of probable cause. Oxenham

v. Johnson, 241 Va. 281, 288-89 (1991).

107.    Cote did not merely fail to present exculpatory evidence to the magistrate.

Cote intended that Fialdini be prosecuted for a crime for which there was no probable

cause and he took steps necessary to realize his intentions. Including withholding from

the magistrate the fact of his illegal entry in to Fialdini's house and the altering of the

warrant.

108.   Fialdini claims a constitutional right not to be knowingly arrested and subjected to prosecution without probable cause, a claim which, according to Goodwin, supra., satisfies the pleading requirements of § 1983.

109.   Due to this violation by Cote of Fialdini's constitutional right, Fialdini was damaged.  As a victim of Cote's actions, Fialdini may recover, and hereby prays for, damages directly related to his malicious prosecution, including damages for physical injury, property damage, and injury to reputation, defense costs, and so forth.

### Count VIII
### (19.2-59 claim against Cote, first entry onto property)

110.   Plaintiff re-alleges and incorporates by references all previous paragraphs of the complaint as if fully set forth herein.

111.   In Virginia, a suit against a sheriff and his deputies in their official capacities and suits against a sheriff's office are suits against the state. See Harris v. Hayter, 970 F. Supp. 500, 502 (W.D. Va. 1997) ("In Virginia, a suit against a sheriff in his official capacity is a suit against a state official."); Francis v. Woody, 2009 U.S. Dist. LEXIS 43599, 2009 WL 1442015 at 4 (E.D. Va. May 22, 2009) ("[I]n Virginia, a lawsuit against a sheriff in his official capacity is actually a lawsuit against the State.); see also Blankenship v. Warren County, 931 F. Supp. 447, 449 (W.D. Va. 1996); Bell v. City of Roanoke's Sheriff's Office, 2009 U.S. Dist. LEXIS 120153, 2009 WL 5083459 at 2 (W.D. Va. Dec. 29, 2009).

112.   The Commonwealth of Virginia has waived sovereign immunity as stated in the Virginia Tort Claims Act, Virginia Code §8.01-195 et seq.

113.   States are free to impose greater protections against illegal searches than those embodied in the federal constitution.  See Thompson v. Commonwealth, 10 Va.

App. 117, 122 (Va. Ct. App. 1990). By imposing such requirements, States may create additional avenues for relief, but do not thereby also create additional rights of constitutional dimension. Street v. Surdyka, 492 F.2d 368, 371 (4th Cir. MD 1974) (no Fourth Amendment violation merely because an arrest violated a state statute prohibiting warrantless arrest for misdemeanor committed outside of officer's presence).

114.    Virginia Code Sec. 19.2-59, most recently amended in 1997, limits an officer's actions with regard to searches and does not provide for the "exigent circumstances" exception to Fourth Amendment violations. In that statute, the General Assembly specifically states: "No officer of the law or any other person shall search any place, thing, or person, except by virtue of and under a warrant issued by a proper officer. Any officer or other person searching any place, thing or person otherwise than by virtue of and under a search warrant, shall be guilty of malfeasance in office...."

115.    "'Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.'" Barr v. Town & Country Properties, Inc., 240 Va. at 295, 396 S.E.2d at 674 (quoting Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1933)).

116.    It is undisputed that Cote, when he entered Fialdini's property to search for Nicholas Fialdini and encountered Andrew Fialdini, did so without virtue of or under a warrant issued by a proper officer.

117.    Cote acted with actual malice as his actions prompted by ill will, malevolence, grudge, spite, wicked intention and a conscious disregard of the rights of Fialdini. See Lee v. Southland Corp., 219 Va. 23, 27, 244 S.E.2d 756, 759 (1978).

118.    Virginia Code § 19.2-59 further states: "Any officer or person violating the provisions of this section shall be liable to any person aggrieved thereby in both compensatory and punitive damages.

119.    An award of punitive damages is proper when actual malice, or malice in fact, is established by the evidence. Jordan v. Sauve and Koons, 219 Va. 448, 452, 247 S.E.2d 739, 742 (1978).

120.    By violating Virginia Code § 19.2-59, Cote caused damages to Fialdini. By virtue of that statute, he is entitled to, and hereby prays for, compensatory and punitive damages against Cote. Virginia Code § 19.2-59 also permits equitable relief in the form of the Court declaring that Cote has violated this section and is guilty of said violation, and so prays for said relief.  Upon the second such declaration, Cote shall immediately forfeit his office.

## Count IX
### (Trespass claim against Cote, first entry on to property)

121.    Plaintiff re-alleges and incorporates by references all previous paragraphs of the complaint as if fully set forth herein.

122.    Because the deputy did not possess a search warrant permitting him to enter the home of Maryann Fialdini, upon his crossing the threshold without consent, he became a trespasser.  Virginia has long held that an officer who comes on the property of a citizen without authority is a trespasser. McClannan v. Chaplain, 136 VA 1, 116 S.E. 495 (1923).  Moreover, an "owner may resist the trespass, opposing force against force." Bausell v. Commonwealth, 165 Va. 669, 688 (Va. 1935); Montgomery v. Commonwealth, 98 Va. 840 (Va. 1900) (everyman has the right to protect his property absent the use of deadly or unreasonable force).  Thus, even if one accepts the officer's

version of events that Maryann Fialdini purposefully pushed him, such action was justified as a defense of property from a trespasser and not a criminal act.

123.    As a result of Cote's initial trespass, Fialdini has been damaged. Fialdini is entitled to seek, and hereby prays for, compensatory damages for invasion of his property as well as injunctive relief enjoining Cote from entering her property in the future.

### Count X
### (19.2-59 claim against Cote, Sanford, and Gaither)

124.    Plaintiff re-alleges and incorporates by references all previous paragraphs of the complaint as if fully set forth herein.

125.    The provisions of Virginia Code Sec. 19.2-59 also apply to the conduct of Cote, Sanford, and Gaither. It is undisputed that Cote, Sanford, and Gaither entered and searched Fialdini's house without virtue of or under a warrant issued by a proper officer.

126.    Cote, Sanford, and Gaither with actual malice as their actions were prompted by a conscious disregard of the rights of Fialdini.

127.    Cote, Sanford, and Gaither, by virtue of their violation of Virginia Code § 19.2-59, are liable to Fialdini in both compensatory and punitive damages for this violation, in addition to liability for other violations of this statute.

128.    By violating Virginia Code § 19.2-59 in the conduct of the search of Fialdini's home, Cote, Sanford, and Gaither caused damages to Fialdini. By virtue of that statute, Fialdini is entitled to, and prays for, compensatory and punitive damages against them. Virginia Code § 19.2-59 also permits equitable relief in the form of the Court declaring that Cote, Sanford, and Gaither have each violated this section and each is

guilty of said violation, and thus prays for such relief. Upon the second such declaration, the officers shall immediately forfeit their respective offices.

### Count XI
### (Trespass against Cote, Sanford, and Gaither)

129.    Plaintiff re-alleges and incorporates by references all previous paragraphs of the complaint as if fully set forth herein.

130.    Because Cote, Sanford, and Gaither did not possess a search warrant permitting any of them to enter Fialdini's home, upon crossing the threshold without consent, each became a trespasser.

131.    As a result of Cote, Sanford, and Gaither's trespass, Fialdini has been damaged. Fialdini is entitled to seek, and hereby prays for, compensatory damages for invasion of his property as well as injunctive relief enjoining Cote from entering his property in the future.

### Count XII
### (Malicious Prosecution and Abuse of Process Claim against Cote)

132.    Plaintiff re-alleges and incorporates by references all previous paragraphs of the complaint as if fully set forth herein.

133.    Under Virginia law, a prima facie case of malicious prosecution requires a showing that the prosecution was 1) malicious; 2) instituted by, or with the cooperation of, the defendant; 3) without probable cause; and 4) terminated in a manner not unfavorable to the plaintiff.

134.    In order to make out a claim for abuse of process, Fialdini must allege: 1) the existence of an ulterior purpose; and 2) an action in the use of process that would not

be proper in regular prosecution. <u>Triangle Auto Auction, Inc. v. Cash</u>, 238 Va. 183, 184, 380 S.E.2d 649, 5 Va. Law Rep. 2900 (1989).

135.    The prosecution of Fialdini was set on foot by Cote and it terminated in a dismissal with prejudice of all charges against Fialdini. The prosecution was instituted and procured by Cote's filing of his false and incomplete criminal complaint against Fialdini. The complaint was without probable cause as Cote was a trespasser in Fialdini's house at the time of the alleged offense. The filing of the complaint was malicious.

136.    Entry of an order of <u>nolle prosequi</u> or dismissal with prejudice constitutes termination "in a manner not unfavorable to the plaintiff." Malice may be inferred from the absence of probable cause.

137.    Cote did not merely fail to present exculpatory evidence to the magistrate. Cote intended that Fialdini be prosecuted for a crime for which there was no probable cause and he took steps necessary to realize his intentions, including withholding from the magistrate the fact of his illegal entry in to Fialdini's house and the altering of the warrant.

138.    This is a case in which Cote, angered by Fialdini's correct statement of his legal rights and refusal to permit a search that was clearly illegal absent her consent, arrested a homeowner in a fit of pique. Cote then sought to justify Fialdini's arrest with a significantly incomplete sworn statement to a magistrate, the altering of official court records, direct fabrication of events, and failure to follow the law and document the illegal strip search.

139.    Cote further brought the complaint and sought process against Fialdini in order to draw attention away from his own illegal acts. This improper purpose and use of process damaged Fialdini.

140.    Cote acted with actual malice as their actions were prompted by a conscious disregard of the rights of Fialdini.

141.    Due to this malicious prosecution and abuse of process by Cote, Fialdini was damaged. As a victim of Cote's actions, Fialdini may recover damages directly related to his malicious prosecution, including damages for physical injury, property damage, and injury to reputation, defense costs, and so forth. In addition, Fialdini may recover punitive damages.

## Count XIII
### (Tort Claims Against Sheriff Stephen O. Simpson)

142.    Plaintiff re-alleges and incorporates by references all previous paragraphs of the Complaint as if fully set forth herein.

143.    The Sheriff's Office is protected by sovereign immunity with respect to the torts of false arrest and malicious prosecution alleged against his deputies. Virginia Code § 8.01-195.3(6).

144.    It is well-settled in Virginia that governmental employees are not entitled to sovereign immunity for intentional torts. Elder v. Holland, 208 Va. 15, 19, 155 S.E.2d 369 (1967). This is true whether they act within or without the scope of their authority. Fox v. Deese, 234 Va. 412, 423-424, 362 S.E.2d 699 (1987). Since assault and battery is an intentional tort, sovereign immunity is not available to the deputies identified in this Complaint.

145. Although Virginia's sheriffs fall within the doctrine of sovereign immunity generally applicable to other state officials (see, Heider v. Clemons, 241 Va. 143, 400 S.E.2d 190 (1991)), such doctrine is not available to Sheriff Simpson in this case.

146. In Virginia that the relationship between a sheriff and his deputies is significantly different from the relationship between other state officers and their employees. The Courts have ruled that the sheriff shall answer civilly for all the acts of his deputy. James v. M'Cubbin, 6 Va. (2 Call) 273, 274 (1800).

147. In trespass actions: "The law looks upon the sheriff and his officers as one person: he is to look to his officers that they do their duty; for if they transgress, he is answerable to the party injured by such transgression; and his officers are answerable over to him. Moore's Adm'r v. Dawney and Another, 13 Va. (3 Hen. & M.) 127, 132 (1808).

148. On principles of public policy, the liability of a sheriff for his deputy is much more extensive than the general law regarding a master/servant relationship. "The acts and defaults of the deputy, colore officii, are considered in law as the acts and defaults of the sheriff, who is liable therefor [sic] in the same form of action as if they had been actually committed by himself. Mosby v. Mosby, 50 Va. (9 Gratt.) 584, 603 (1853).

149. "The sheriff [is] answerable in an action of trespass vi et armis for the act of his officer, the law looking upon the sheriff and all his officers as one person: He is to look to his officers that they do their duty; for if they transgress, he is answerable to the party injured by such transgression, and his officers are answerable over to him. There is a difference between master and servant; but a sheriff and all his officers are considered,

35

in cases like this, as one person." Id., quoting Justice Blackstone in Saunderson v. Baker, 3 Wils. R. 309 (Court of Common Pleas 1772).

150.    The above cases, while far from recent, have never been overruled or questioned by the Virginia Supreme Court.

151.    Since Sheriff Simpson is liable for all torts committed by his deputies, unintentional and intentional, and since sovereign immunity does not apply to intentional torts, Sheriff Simpson is liable, jointly and severally for the damages caused by the named deputies for all Virginia torts and statutory violations with the exception of claims for false arrest and malicious prosecution.

152.    As the keeper of the ADC, as established in Virginia Code § 53.1-116.2, the Sheriff is responsible for the operation and conduct of the ADC. Further, 6 VAC 15-40-1210 of the Virginia Administrative Code states that the Sheriff of a County is responsible for seeing that the County's lockup is operated in full conformance with the regulations of the Department of Criminal Justice Services. The Sheriff failed in his responsibility with respect to the treatment of Fialdini.

153.    Fialdini may recover, and hereby prays for damages from Sheriff Stephen O. Simpson that are directly related to his suffering from the torts committed by his deputies.

## Count XIV
### (Virginia Constitutional Claim on Search against Cote)

154.    Plaintiff re-alleges and incorporates by references all previous paragraphs of the Complaint as if fully set forth herein.

36

155.    Article 1, § 10 of the Virginia Constitution, part of the Bill of Rights, states: "That general warrants, whereby an officer or messenger may be commanded to search suspected places without evidence of a fact committed, or to seize any person or persons not named, or whose offense is not particularly described and supported by evidence, are grievous and oppressive, and ought not to be granted." The requirements under this section and statutes implementing it are substantially the same as those contained in the Fourth Amendment [of the U.S. Constitution]. Iglesias v. Commonwealth, 7 Va. App. 93, 372 S.E.2d 170 (1988)

156.    Article 1, § 11 of the Virginia Constitution, part of the Bill of Rights, states in part: "That no person shall be deprived of his life, liberty, or property without due process of law; that the General Assembly shall not pass any law impairing the obligation of contracts, nor any law whereby private property shall be taken or damaged for public uses, without just compensation, the term "public uses" to be defined by the General Assembly; and that the right to be free from any governmental discrimination upon the basis of religious conviction, race, color, sex, or national origin shall not be abridged, except that the mere separation of the sexes shall not be considered discrimination." Article 1, § 11 of the Constitution of Virginia has specifically been determined to be self-executing and enforceable in a common law action. Jenkins v. County of Shenandoah, 246 Va. 467, 470, 436 S.E.2d 607, 10 Va. Law Rep. 484 (1993).

157.    Constitutional provisions in bills of rights and those merely declaratory of common law are usually considered self-executing. The same is true of provisions which specifically prohibit particular conduct. Provisions of a Constitution of a negative character are generally, if not universally, construed to be self-executing. Gray v. Va.

Secy. of Transp., 276 Va. 93, 103-104 (Va. 2008). If a constitutional provision is self-executing, no further legislation is required to make it operative. Gill v. Nickels, 197 Va. 123, 129, 87 S.E.2d 806, 810 (1955); City of Newport News v. Woodward, 104 Va. 58, 60, 51 S.E. 193, 193 (1905); see also Black's Law Dictionary 1391 (8th ed. 2004) (defining the term "self-executing" as "effective immediately without the need of any type of implementing action").

158.   Sovereign immunity does not preclude declaratory and injunctive relief claims based on self-executing provisions of the Constitution of Virginia or claims based on federal law. Digiacinto v. Rector & Visitors of George Mason Univ., 281 Va. 127, 137 (Va. 2011). The fact that a self-executing constitutional provision is operative without the need for supplemental legislation means that the provision is enforceable in a common law action. Gray, supra. To give full force and effect to constitutional provisions as self-executing, a person with standing must be able to enforce them through actions against the Commonwealth. Id.

159.   Like federal standing jurisprudence, Virginia requires that a complainant show a particularized injury due to a violation the applicable constitutional provisions. See Wilkins v. West, 264 Va. 447, 460 (Va. 2002).

160.   Fialdini has been damaged by the violation of his rights under the Virginia Constitution. He is entitled to, and hereby prays for, a declaration that his rights have been so violated and an injunction against those violating his rights that enjoins them from violating his rights in the future.

## Count XV
### (Attorneys Fees against all parties as applicable)

161.    42 U.S.C. § 1988(b) states, in part: "In any action or proceeding to enforce a provision of sections…1983… of this title…., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs…. "

162.    Upon prevailing on her claims against the Defendants for violations of 42 U.S.C. § 1983, Fialdini is entitled to an award of attorneys fees.

163.    Fialdini is entitled to, and hereby prays for, an award of attorneys fees if he prevails on his claims malicious prosecution and false arrest. R.L. Moore, Inc. v. Shawn, 23 Va. Cir. 117, 119-120 (1991).

WHEREFORE, Plaintiff, Andrew Fialdini, requests judgment against Defendants, jointly and severally where applicable, as follows:

A.    For appropriate declaratory relief regarding the unlawful and unconstitutional acts and practices of Defendants.

B.    For appropriate compensatory damages in an amount to be determined at trial;

C.    For appropriate nominal damages in an amount to be determined at trial;

D.    For appropriate punitive damages in an amount to be determined at trial;

E.    For appropriate equitable relief against all Defendants as allowed by the 42 U.S.C. § 1983, including the enjoining and permanent restraining of these violations, and direction to Defendants to take such affirmative action as is necessary to ensure that the effects of the unconstitutional and

unlawful practices are eliminated and do not continue to affect Plaintiff or others;

F.    For an award of reasonable attorney's fees and his costs on his behalf expended as to such Defendants pursuant to 42 U.S.C. Section 1988; and

G.    For such other and further relief to which Plaintiff may show himself justly entitled.

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 38(B), PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

ANDREW FIALDINI
By Counsel

WESTLAKE LEGAL GROUP

_____

Thomas K. Plofchan, Jr., VSB# 34536
Jason R. Collins, VSB # 65346
46175 Westlake Drive, Suite 320
Potomac Falls, VA 20165
Tel: (703) 406-7616
Fax: (703 444-9498